UNION TRUST COMPANY, GUARDIAN, *v.* CHILDREN'S AID ASSOCIATION.

[No. 11,224. Filed February 15, 1922.]

1. TRUSTS.—*Creation.—Funds Raised by Popular Subscription for Child.*—Where contributions from the general public collected by a number of persons for a child were deposited with an aid association under a written contract obligating the association to invest and expend the fund for the use and benefit of the child, *held* that the association became a trustee of the fund to invest and hold it for the uses and purposes set forth in the contract. p. 580.

2. TRUSTS.—*Funds Raised by Popular Subscription for Child. —Power of Collectors to Create Trust.*—Where several persons and newspapers collected contributions for the benefit of a child from a large number of persons who gave no specific directions as to the use or disposition of the money, they were agents of the contributors for the final disposition of the fund and had authority to create a trust for the child's benefit; the contributions not constituting a gift *inter vivos* to the child entitling the guardian to custody of the fund as being the property of the ward. p. 581.

576     APPELLATE COURT OF INDIANA,

Union Trust Co., Gdn., v. Children's Aid Assn.—77 Ind. App. 575.

3. PRINCIPAL AND AGENT.—*Authority of Agent.*—*Presumptions.*
—The act of an agent being legal, his authority to do that
act will be presumed until directly challenged. p. 581.

4. TRUSTS.—*Funds Raised by Popular Subscription for Child.*
—*Contract of Trust.*—*Right to Challenge.*—Where a fund was
raised by popular subscription for the benefit of a child, and
the collectors placed the money in the hands of a trustee under
contract to expend it in a certain manner, no one except the
donors may complain as to such contract of trust, in the absence
of misconduct on the part of the trustee. p. 581.

5. TRUSTS.—*Creation.*—*Statutes.*—*Scope and Applicability.*—
Sections 4012-4040 Burns 1914, §§2969-2997 R. S. 1881, pro-
viding how trusts shall be created, apply only to trusts in
real estate, and not to a trust created by the collectors of a
fund for the education and maintenance of a child. p. 582.

From Marion Probate Court (1,368); *Mahlon E.
Bash,* Judge.

Action by the Union Trust Company, guardian,
against the Children's Aid Association. From a judg-
ment for defendant, the plaintiff appeals. *Affirmed.*

*G. R. Estabrook,* for appellant.

*Leo M. Rappaport* and *Albrecht R. C. Kipp,* for ap-
pellee.

ENLOE, J.—March 2, 1920, one John Sullivan lost his
life by drowning in Fall creek, in the city of Indian-
apolis, Indiana. He lost his life while attempting to
save two colored boys from drowning in said creek.
He left surviving him a son, James Sullivan, commonly
called "Jimmy," who was then of the age of seven years,
and who had lost his mother by death when he was
about eight months old. The father and "Jimmy" lived
at the home of one Pat Sullivan, father of said John.
The Sullivans were in very moderate circumstances.
After the death of said John, and, we may say as a
recognition of his heroic act in sacrificing his own life
in an endeavor to save the lives of others, a movement
was started to raise a fund for the benefit of his sur-
viving son, "Jimmy." The matter of raising this fund

was first begun by certain individuals, but they soon became aware of the fact that the people generally were interested in the matter; that the movement to raise said fund was one of general interest, and therefore the matter should be taken up and handled in a systematic manner. The individual who first had started this matter turned over what money he had collected to the colored Y. M. C. A., which was to continue the collection. The newspapers of the city also took up the matter and funds were collected by the Indianapolis News, and Daily Times.

On March 18, 1920, the Colored Men's Branch of the Y. M. C. A. turned over the funds in its possession, so collected, to the appellee herein, under the following agreement, viz.:—

"This agreement made and entered into by and between the Colored Men's Branch of the Indianapolis Y. M. C. A., who shall hereinafter be known as the party of the first part and the Children's Aid Society, Indianapolis, Indiana, who shall hereinafter be known as the party of the second part, WITNESSETH: That party of first part agrees to turn over to party of second part the sum of $1,358.16 which sum constitutes what is known as "The Jimmie Sullivan Fund" and is composed of various sums of money contributed by individuals and institutions to said fund, for the use, education, and maintenance of James Sullivan under the following conditions. The said fund is to be deposited on interest or otherwise invested at the discretion of party of second part and the proceeds thereof and so much of the principal as necessary shall be paid to James Sullivan from time to time as his needs may require until he attains the age of twenty-one. If at that time there is any part of said sum left in the hands, custody, and treasury of party of second part, said sum may be turned over in full to said James Sullivan and party of second part will thereby be relieved of all obligations and responsibilities in connection therewith; that in the

578 APPELLATE COURT OF INDIANA,

Union Trust Co., Gdn., *v.* Children's Aid Assn.—77 Ind. App. 575.

event of the death of James Sullivan before he attains the age of twenty-one, said money is to be paid to his grandparents; in the event of the death of the grandparents of James Sullivan, whatever part of said money is still remaining it shall go to The Children's Aid Society for the use and benefit of dependent children.

Party of the second part accepts said sum of $1,358.16 and shall use it in accordance with the terms and conditions above set forth and shall exercise its discretion as to how much of said principal shall from time to time be expended for the use and benefit of the said James Sullivan, and for the use of his grandparents in the event of the death of the said James Sullivan, and to otherwise faithfully carry out the terms and conditions of the above agreement.

In witness whereof the parties have hereunto set their hands and seals this the 18th day of March 1920.

(Signed)    Colored Men's Branch Y. M. C. A.
               by L. E. DeFrantz, Secy.

(Signed)    The Children's Aid Association
               by Paul L. Kirby, Secy."

On March 23, 1920, The Indianapolis News turned over the funds in its hands so collected to the appellee herein, under an agreement similar to the above, as to its main provisions.

After appellee had received the funds above mentioned in said contracts, additional funds came into its hands from said Indianapolis News, Indiana Daily Times and from certain individuals, all to be added to the moneys already received by it and to become a part of the funds received under said contract so that the total amount of the funds so received was $3,126.55.

On October 6, 1920, upon a petition theretofore duly filed in that behalf, the appellant was, by the Marion Probate Court, duly appointed as guardian of James Sullivan, the boy for whom said fund was raised, and thereafter, on October 20, 1920, it filed its complaint which was the basis of this action, alleging therein that

the appellee herein, "had in its possession money which was and is the property of said minor child, said James Sullivan, who has been at all times complained of herein and now is the sole, only, and absolute owner thereof." In and by said complaint the appellant sought to obtain possession of said money in the hands of the appellee placed there under said agreements.

This complaint was answered by the appellee, first, by a general denial, and second, by a special answer in which it admitted having received a certain sum of money ($3,126.55), but alleged it held the same as a trustee for said James Sullivan under the contracts hereinbefore mentioned, copies of which said contracts were attached to said answer as exhibits. The answer further alleged that the appellee, as such trustee had invested all of said money so received in United States Treasury Certificates, in Liberty Bonds, and in War Savings Stamps. Other allegations contained in said answer need not be herein set out, as they are of no controlling importance. This paragraph of answer was met by a reply in general denial.

Upon the issues thus formed the cause was submitted to the court for trial, which resulted in a finding against the appellant, and in favor of the appellee. There was judgment accordingly. The appellant's motion for a new trial, on the grounds: (1) That the decision of the court was not sustained by sufficient evidence, and (2) was contrary to law, having been overruled, it now prosecutes this appeal upon an assignment of error challenging the correctness of said ruling.

In the decision of this case we are called upon first, to declare the legal effect of said contracts, under which said moneys were received.

Pomeroy in his work on equity, says: "Private trusts are those created by some written instrument, or in some trusts of personal property by a mere verbal dec-

laration, for the benefit of certain and designated individuals, in which the *cestue que trust* is a known person or class of persons." Pomeroy, Equity Jurisp. (4th ed.) §987.

"The extent and incidents of the rights held by the respective parties must, of course, vary with the nature of the trust itself and the duties which the trustee is called upon to perform. It is a universal rule, however, that the trustee's estate and power over the subject-matter are commensurate with the duties which the trust devolves upon him, and are sufficient to enable him to perform all those duties." Pomeroy, Equity Jurisp. (4th ed.) §991.

"No particular technical words need be used; even the words 'trust' or 'trustee' are not essential; any other words which unequivocally show an intention that the legal estate was vested in one person, but to be held in some manner or for some purpose on behalf of another, if certain as to all other requisites, are sufficient." Pomeroy, Equity Jurisp. (4th ed.) §1009.

"A second species of trust by inference sometimes arises when property is given to a parent, or person *in loco parentis*, with no trust declared in terms, but with such directions for the maintenance of his family or children as enable the court to infer an intention on the part of the donor that the property should be held in trust for the purposes of the maintenance. No definite rule can be laid down; each case must stand upon its own circumstances. If the language is sufficient for the intention to be clearly inferred, the trust will be enforced." Pomeroy, Equity Jurisp. (4th ed.) §1012.

Applying the foregoing rules to the said contracts in question we have no hesitation in saying that under them the appellee herein became a trustee of said

1. funds to invest and hold the same for the uses and purposes as therein set forth.

Union Trust Co., Gdn., *v.* Children's Aid Assn.—77 Ind. App. 575.

But the appellant contends that it was the intention of the original donors to give said money so contributed absolutely to said James Sullivan; that it was 2. simply a gift *inter vivos;* and that by reason thereof said money is the property of said ward and that the appellant, as his legal guardian, is therefore entitled to such money. In answer to this contention we say, that even if the original donors had the intention claimed that question is not raised in this action. The money in question was contributed by many persons; it was a contribution springing from humane and generous impulse; it went into the hands of those collecting it without any specific direction from the several donors as to how it should be handled; specific directions by each individual contributor was not only impracticable, but the giving of the same would naturally, under the circumstances, militate against the accomplishment of the object sought, for no person would want to accept money, in small sums from hundreds of persons and undertake to apply each donation to some particular purpose which might be suggested by the whim of the individual donor. These persons when they thus placed their money in the hands of these collectors thereby made such collectors their agents for the final disposition of said fund, according to the general purpose.

The proposition is so elementary as to need no citation of authority that, the act of an agent being legal, his authority to do the act will be presumed until directly challenged. In this case the authority 3, 4. of these agents—collectors of the fund—to make the contracts in question is not directly challenged. The donors, so far as the record before us discloses, are entirely satisfied with the way the funds were placed, and no one else in the absence of misconduct on the part of the trustee has a right to complain.

Appellant also insists that the supposed trust is invalid, and that therefore it was entitled to said property, because not created in accordance with the provisions of our statute, §§4012-4040 Burns 1914, §§2969-2997 R. S. 1881. There is no merit in this contention. A reading of said sections will disclose that they have reference to a trust in real estate.

We find no error in the record. Judgment affirmed. Remy, J., not participating.